UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 1:21-cr-00050-CRC-1 |
| v. : | |
| : | Judge Christopher R. Cooper |
| JENNIFER LEIGH RYAN, : | |
| Defendant. : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S
MOTION FOR RECUSAL PURSUANT TO 28 U.S.C. § 455**

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully opposes defendant Jennifer Leigh Ryan's Motion for Recusal Pursuant to 28 U.S.C. § 455. Ryan argues that the Court should recuse from deciding her petition for a writ of error coram nobis because the Court's "impartiality might reasonably be questioned." ECF No. 102, Page 1.

The Court should deny Ryan's recusal motion. Although Ryan cites various news articles that supposedly establish the Court's bias, she provides none for review. That reason alone justifies denial. Beyond this threshold error, each of Ryan's four purported justifications for recusal rest on mischaracterizations of the Court's statements and actions, are wholly unrelated to Ryan and her criminal case, or are otherwise insufficient to support a showing of bias. As a result, Ryan has failed to establish that the Court's impartiality might reasonably be questioned. Consequently, her recusal motion should be denied.

**BACKGROUND**

Ryan pleaded guilty to "Parading, Demonstrating, or Picketing in a Capitol Building." ECF No. 38. In November 2021, the Court sentenced Ryan to sixty days of imprisonment along with other penalties. ECF No. 55, Page 50. Ryan completed her sentence without incident.

1

Ryan was pardoned in 2025.  90 FR 8331; Def. Ex. Y.  After being pardoned, Ryan filed a *pro se* petition for a writ of error coram nobis, a supporting memorandum, various exhibits, and the instant recusal motion.  *See* ECF No. 102, 103, 103-1.

## **ARGUMENT**

**Because Ryan Has Not Shown the Court's Impartiality Might Reasonably Be Questioned, Her Recusal Motion Must Be Denied.**

Ryan argues that the Court's "extra-judicial comments and judicial rulings" establish "actual bias and, at minimum, the appearance of partiality."  ECF No. 102, Pages 1-3.  Ryan cites the Court's "prejudgment," "political framing of sentences," "inflammatory rhetoric," and "inconsistent application" of sentences as evidence of the Court's bias and justification for recusal.  *Id*., Pages 1-4.

A district court judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned" by a "reasonable and informed observer."  28 U.S.C. § 455(a); *United States v. Williamson*, 903 F.3d 124, 137 (D.C. Cir. 2018).  "Because even the appearance of questionable impartiality" threatens "faith in and adherence to judicial decisions[,]" section 455(a) casts a "very broad" net that "would ensnare not only those actually lacking impartiality, but also those whose impartiality might appear questionable to a reasonable person."  *S.E.C. v. Bilzerian*, 729 F. Supp. 2d 19, 21-22 (D.D.C. 2010) (emphasis omitted).  Important too, though, is the need to "deter unhappy litigants from abusing the recusal statute and to promote faith in the judicial system."  *Id*. at 22.  Thus, a court "has as much an obligation not to recuse himself where there is no reason to do so as he does to recuse himself when proper."  *Id*. (emphasis omitted) (citing *United States v. Greenspan*, 26 F.3d 1001, 1005 (10th Cir. 1994)).

Because judges are presumed impartial, there is a "presumption against disqualification."  *Id*. (quoting *Cobell v. Norton*, 237 F. Supp. 2d 71, 78 (D.D.C. 2003)).  "[T]he moving party must

2

demonstrate by clear and convincing evidence that disqualification is required by Section 455(a)." *Walsh v. F.B.I.*, 952 F. Supp. 2d 71, 75 (D.D.C. 2013) (quoting *Ramirez v. U.S. Dep't of Justice*, 680 F. Supp. 2d 208, 211 (D.D.C. 2010)).

Importantly, a court's rulings "alone almost never" establish judicial bias. *Liteky v. United States*, 510 U.S. 540, 555 (1994); *Williamson*, 903 F.3d at 137. This is because rulings generally do not rely on extrajudicial sources and "can only in the rarest circumstances" establish the necessary favoritism or antagonism required for recusal. *Liteky*, 510 U.S. at 555. Moreover, a court's opinions based on the facts or events occurring during the proceedings do not establish bias required for recusal "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*.

In fact, a court's "critical or disapproving" or even "hostile" statements regarding the parties, counsel, or the case generally do not indicate bias warranting recusal. *Id*. Because judges (like all people) are "imperfect," mere demonstrations of "impatience, dissatisfaction, annoyance, and even anger" are insufficient to suggest the appearance of bias. *Id*. at 555-56. Instead, "a judge's comment is disqualifying only if it connotes . . . a closed mind on the merits of the case." *United States v. Haldeman*, 559 F.2d 31, 136 (D.C. Cir. 1976). And a judge's comments forming the basis for a recusal request "must be viewed in context," not in isolation. *Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 166 (S.D.N.Y. 2012) (quoting *In re Wilborn*, 401 B.R. 848, 860 (S.D. Tex. 2009)).

Here, Ryan has not established any reason for the Court to recuse. At the outset, Ryan failed to provide the evidence she cites in support of recusal. It is incumbent upon Ryan to provide evidentiary support for her recusal claim, and vague citations to various news articles organized into a table do not satisfy her evidentiary burden. *See* Def. Ex. F. Indeed, if conclusory allegations

3

without evidentiary support do not establish a constitutional claim, they certainly do not establish an evidentiary basis for recusal. *See, e.g.*, *Walsh v. Comey*, 110 F. Supp. 3d 73, 77 (D.D.C. 2015) (citing *United States v. Bennett*, 539 F.2d 45, 51 (10th Cir. 1976) (denying recusal motion supported by an affidavit that "lacked facts having the tendency to show personal bias and prejudice and contained only insufficient conclusions"); *Harris v. Geico Gen. Ins. Co.*, 961 F. Supp. 2d 1223, 1230 (S.D. Fla. 2013) (denying motion for recusal that "merely restates in conclusory fashion [plaintiff's] belief that the [court's] comments at the hearing are indicative of bias")).

Beyond that threshold issue, however, each of Ryan's purported four grounds for recusal fails. The articles provide no evidence that would cause a reasonable observer to question the Court's impartiality because the articles do not suggest this Court has made *any* specific statements regarding Ryan or her case. *See Walsh*, 952 F. Supp. 2d at 75 ("section 455(a) requires only the reasonable appearance of bias"). Ryan instead attempts to attribute bias to the Court by lifting out of context various statements that the Court made in different settings as reported by the media throughout the past few years. ECF No. 102, Pages 2-3. That effort is misplaced and plainly insufficient to justify recusal.

*First*, Ryan claims that the Court's "statements defending the judiciary's handling of cases like hers somehow shows the Court prejudged these prosecutions. ECF No. 102, Page 3. Ryan contends that the Court will therefore "prejudge the validity of" her prosecutorial misconduct and suppressed evidence claims contained in her coram nobis petition. *Id*. But Ryan does not elaborate on how a statement about the judiciary's successful case management demonstrates a "reasonable appearance of bias" under section 455(a). *Walsh*, 952 F. Supp. 2d at 75. Indeed, no "reasonable and informed observer would question the judge's impartiality" based on this statement because it

4

does not concern whether a given prosecution or set of prosecutions were justified or appropriately handled. *Id*.

*Second*, Ryan cites a CNN article in which the Court reportedly said that sentences like hers "contributed to a 'peaceful election,'" and she argues that this "confirms" the Court "used sentencing for symbolic deterrence, mirroring [Ryan's] optics-driven punishment." ECF No. 102, Page 3. However, Ryan lifts the Court's words out of context.

In fact, CNN quoted the Court's sentencing hearing statements for another "nonviolent" defendant as follows: "[The Court] think[s] the fact, perhaps, that, you know, this past election, knock wood, has passed peacefully may be a result of the sentences that we have handed down and the seriousness with which we have handled January 6 cases in this Court[.]" Gov't Ex. 1 at 4-5. The Court hoped "that that message has gotten out, and part of that message is that there will be consequences for actions[.]" *Id*.

The Court's statements are unrelated to Ryan or her prosecution. She is not mentioned in either the article or the Court's general sentencing statement. As a result, the Court's statements in no way address the merits of Ryan's particular prosecution or suggest a bias against her.

Moreover, Ryan's assertion that the Court was driven to punish her for "optics" fails for the reasons explained in the government's opposition to her coram nobis petition. ECF No. 119, Pages 22-25. As explained there, the Court properly considered relevant sentencing considerations and the parties' arguments when it decided Ryan's sentence. *Id*.; *see* 18 U.S.C. § 3553(a)(2)(A), (B). The Court therefore based Ryan's sentence on relevant sentencing considerations that themselves do not evince bias.

*Third*, Ryan argues that the Court's characterizations of "wrecking ball" used "while ruling" on related "executive actions," somehow "suggests antagonism toward [Ryan's]

5

presidential pardon." ECF No. 102, Page 3.  But this is not the case.  The Court did not use the term "wrecking ball;" that was the New York Times, which opened the article Ryan cites to support recusal with that term.  *See* Alan Feuer, *Judges in D.C., Once Flooded With Jan. 6 Cases, Turn to Trump's Executive Actions*, N.Y. TIMES, (Feb. 22, 2025), https://www.nytimes.com/2025/02/22/us/federal-judges-trump-executive-orders.html.  Moreover, a review of the article shows that it did not relate to Ryan or even prosecutions like hers.  The article instead concerned how the D.C. federal district courts, including this Court, were addressing "executive actions" related to government agency restructuring.  *Id*.  The Court's statements regarding these executive actions neither "suggest[] antagonism toward [Ryan's] Presidential Pardon" nor suggest bias against her to a reasonable and informed observer.  ECF No. 102, Page 3.  These statements have nothing to do with Ryan at all.

*Fourth*, Ryan cites a legal ruling, again irrelevant to her, that the Court made in a different case to argue the Court "acknowledged DOJ overreach" in cases like hers yet persisted in imposing "harsh, narrative-driven sentences including" Ryan's sixty-day sentence.  ECF No. 102, Page 3.  Ryan's "inconsistent application" in sentencing argument is (at best) difficult to understand.  The Court's ruling *against* the government leading to the dismissal of two criminal counts against similarly situated defendants obviously does not suggest that a reasonable person would likely question the Court's impartiality in this case.  Indeed, the fact that the Court ruled in *favor* of that defendant shows the Court approaches cases with a fair mind and certainly does not establish any bias against defendants, like Ryan.  Additionally, the Court's decision did not implicate sentencing in any way, much less sentences for defendants like hers generally or Ryan's sentence specifically.  And again, the Court did not punish Ryan for "optics" or to perpetuate a "narrative" as shown in the government's response to Ryan's coram nobis petition.  ECF No. 119, Pages 22-25.

Finally, Ryan contends that the Court evidenced its bias by purportedly punishing her for "protected speech" during sentencing. ECF No. 102, Page 3. This argument fails for two reasons. First, Ryan's argument is conclusory because she failed to directly cite any protected speech that the Court allegedly relied on in violation of her constitutional rights. ECF No. 102, Page 3; *see Walsh*, 110 F. Supp. 3d at 77. Second and contrary to Ryan's conclusory argument, the Court did not violate Ryan's First Amendment free speech protection when it sentenced her.

"First Amendment protections apply at sentencing." *United States v. DeChristopher*, 695 F.3d 1082, 1098 (10th Cir. 2012). Notably, a court may consider some constitutionally protected activity if it is "relevant to the issues involved in the sentencing proceeding[,]" such as the "defendant's public statements indicating that she considered her sentence to be trivial, or exhibiting a lack of remorse." *United States v. Stewart*, 686 F.3d 156, 167, 170 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Dawson v. Delaware*, 503 U.S. 159, 164-65 (1992)). However, "the imposition of a sentence on the basis of a defendant's beliefs would violate the First Amendment's guarantees." *DeChristopher*, 695 F.3d at 1098 (cleaned up); *United States v. Lemon*, 723 F.2d 922, 937, 938 n.47 (D.C. Cir. 1983) ("[A] court may not punish an individual by imposing a heavier sentence for the exercise of [F]irst [A]mendment rights."). This is because "a defendant's abstract beliefs, however obnoxious to most people, may not be taken into consideration by a sentencing judge." *Wisconsin v. Mitchell*, 508 U.S. 476, 485 (1993); *see also Dawson*, 503 U.S. at 165-66 ("abstract beliefs" of racist association were "totally without relevance to [defendant's] sentencing").

Here, Ryan has mischaracterized the Court's sentencing statements to cursorily assert that the Court "punished [her] protected speech" and beliefs. ECF No. 102, Page 3. Although Ryan does not elaborate on how the Court violated her First Amendment right to speech, the government

7

assumes she is asserting that the Court could not consider and cite in support of its sentence her public statements and social media posts. *See* ECF No. 103-1, Page 3 (alleging judicial bias in sentencing). But as shown in the sentencing hearing transcript, the Court sentenced Ryan after carefully considering the presented evidence as it was relevant to sentencing matters.

That is the case with Ryan's coram nobis assertion that the Court improperly sentenced her based on her public speech and "notoriety." ECF No. 103-1, Page 3; *see Dawson*, 503 U.S. at 164-65; *Williamson*, 903 F.3d at 136. When sentencing Ryan, the Court correctly said that it need not "disregard" her "ABC News" appearance and her "Tweet[s]" because they related to "whether . . . [Ryan] truly accepted responsibility beyond just signing that plea agreement" and whether she showed "respect for the law," which is a statutory sentencing factor the Court must consider. ECF No. 55, Page 48; 18 U.S.C. § 3553(a)(2)(A). The same is true where the Court cited Ryan's expression as relevant to the sentencing factor concerning "the need for general deterrence." ECF No. 55, Page 48; *see* 18 U.S.C. § 3553(a)(2)(B). Since Ryan "generated a fair amount of public interest" through her various public statements and social media posts, ECF No. 55, Pages 48-49, the Court believed that Ryan's sentence should alert that the public that her actions had consequences and would not be tolerated. § 3553(a)(2)(B).

The same is true of the Court's evaluation of whether Ryan was remorseful. The record shows that Ryan publicly expressed her belief that she "didn't do anything wrong" and believed she is "the victim . . . and that [her] actions were warranted." ECF No. 48, Pages 12-13; ECF No. 55, Pages 26-40. The Court correctly concluded that, although Ryan had a First Amendment right to freely express these beliefs, the First Amendment did not bar the Court from referencing her public speech that informed upon relevant sentencing issues, like remorse, when deciding on her sentence. ECF No. 55, Pages 44-45, 48.

And while Ryan does not identify what "fabricated evidence"[1] the Court "adopted," the government presumes she is referring to her "No Evidence" table, where she claims the Court "reviewed the evidence" that the government did not present "in open court." Def. Ex. D. Yet Ryan's "fabricated evidence" argument appears to be one arguing that the evidence the government cited in its sentencing memorandum and used by the Court during sentencing was taken out of context, not that it was "fabricated" or false. In fact, Ryan, in her allocution letter, said that the government made "many false statements" including "rearranging of [her] video streams and *putting them out of context* in order to justify harsher sentencing[.]" ECF No. 49-1, Page 2. Nevertheless, Ryan's counsel challenged these points in her sentencing memorandum and during her sentencing hearing. *See generally* ECF No. 49, Pages 1-3; ECF No. 55, Pages 26-40. Put simply, Ryan has not established that the Court imposed her sentence on "misinformation of a constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980); *Lemon*, 723 F.2d at 933. Because the Court supported its sentence based on "some evidentiary basis beyond mere allegations," *United States v. Chaikin*, 960 F.2d 171, 174 (D.C. Cir. 1992), Ryan has not shown that "a reasonable and informed observer would question the Court's impartiality."[2] *Walsh*, 952 F. Supp. 2d at 75.

---

[1] Ryan cites "(Dkt. 58, Ex. D)" to support this assertion, but no such docket entry appears on PACER. ECF No. 102, Page 3.

[2] The government further points out that Ryan's citation to "*United States v. Perlmutter*, No. 21-125 (D.D.C. 2023)," for the proposition of recusal for perceived bias is one that does not seem to exist. ECF No. 102, Page 3. The government searched Pacer, Westlaw, and LexisNexis to attempt to locate this case without success. But according to Pacer, Case Number "1:21-cr-125" in this district is titled "*United States v. Brian McCreary*" and was handled by the Honorable Beryl A. Howell. There is also no indication that recusal occurred while this case was pending or that this Court was involved in this case at any time. Finally, the government notes that the *McCreary* case concluded in April 2022, so Ryan's citation to the "*Perlmutter*" decision in "2023" appears to be erroneous. *See* Judgment, *McCreary*, No. 1:21-cr-125 (D.D.C. Apr. 1, 2022) (ECF No. 46).

In sum, Ryan has not rebutted the presumption against the Court's disqualification from her coram nobis proceeding. *Bilzerian*, 729 F. Supp. 2d at 22. She provided no evidence to the Court to support her motion for recusal. And Ryan's recusal motion fails because none of her arguments establish that a reasonable person would question the Court's impartiality in this case. *Id*. Indeed, her isolated quotations of the Court's commentary and rulings in unrelated cases are irrelevant to Ryan, and they certainly do not demonstrate a "closed mind on the merits of" her petition or case. *Haldeman*, 559 F.2d at 136. The Court should deny Ryan's recusal motion.

## CONCLUSION

The Court should deny Ryan's motion to recuse under 28 U.S.C. § 455.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

KACIE M. WESTON
Chief, Special Proceedings Division

THOMAS STUTSMAN
Deputy Chief, Special Proceedings Division
Minnesota Bar Number 0392603

By:  */s/ Nicholas S. Bolduc*
NICHOLAS S. BOLDUC
Assistant United States Attorney
Special Proceedings Division
Tennessee Bar No. 035050
601 D Street NW
Washington, D.C. 20530
(202) 252-7572
nicholas.bolduc@usdoj.gov

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that I caused service of the foregoing to be made through the Court's Electronic Case Filing system on January 30, 2026. I further certify that I caused a copy of the foregoing to be posted for delivery by first-class mail to Ms. Jennifer Leigh Ryan, 1990 Main Street Downtown, Suite 750, Sarasota, Florida 34236,[3] on January 30, 2026.

                */s/ Nicholas S. Bolduc*
                NICHOLAS S. BOLDUC
                Assistant United States Attorney

---

[3] Because coram nobis proceedings are quasi-criminal and quasi-civil in nature, "the denomination of the nature of a given petition calls for a functional analysis rather than for doctrinal rigidity." *Trenkler v. United States*, 536 F.3d 85, 94 (1st Cir. 2008) (holding that coram nobis petitions are appealable "civil matters"). This distinction matters because Ryan is not listed on the docket as representing herself in this proceeding. Thus, the government has looked to the Federal Rules of Civil Procedure and served Ryan at the last known address that she used in this proceeding. *See* Fed. R. Civ. P. 5(b)(2)(C) ("service is complete upon mailing"). The government further notes that Ryan represented that she had a new mailing address, which is the address listed in the certificate of service. Finally, Ryan's trial attorneys that are listed on the docket but appear to have terminated representation will nonetheless be served through the Court's Electronic Case Filing System.