# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:21-cr-00050-CRC-1 |
| | § | |
| JENNIFER LEIGH RYAN | § | |
| | § | |
| Defendant. | | |

## SUR-REPLY TO THE UNITED STATES' OPPOSITION TO DEFENDANT'S PETITION FOR A WRIT OF ERROR CORAM NOBIS

## I. Introduction

This reply addresses the Government's response to Ms. Ryan's Petition for Writ of Coram Nobis, which largely avoids engagement with the merits of the record-based constitutional errors raised in the petition.

Ms. Ryan entered a plea agreement amid profound informational asymmetry and overwhelming prosecutorial leverage. The issue for coram nobis is not about waiver, but whether the conviction rests on a reliable, undisputed factual record free from fundamental error. It does not.

## II. Threshold Considerations: Selective Non-Engagement With Material Evidence

The government's response fails to substantively rebut the petition's numerous exhibits and factual allegations. Where it addresses allegations of suppression, fabrication, or improper

sentencing at all, it relies on bare, conclusory denials that neither engage the exhibits nor refute the record. As to most claims, the government offers no response. Such silence does not constitute rebuttal.

When a coram nobis petition raises unrebutted, record-based allegations of suppression, fabrication, and sentencing irregularity—supported by exhibits—the court may deny relief only by either (1) assuming the truth of those unrebutted allegations for purposes of disposition, or (2) making express findings, grounded in the existing record, that refute them.

Coram nobis is an equitable remedy not constrained by the strict procedural limitations applicable to habeas relief. Its purpose is to prevent a miscarriage of justice where fundamental errors have infected the proceedings. *Morgan v. United States*, 346 U.S. 502, 512–13 (1954). A disposition that turns solely on waiver or timeliness—without examination of unaddressed evidence alleging constitutional and structural defects—undermines that remedial purpose.

Here, the government asks the Court to resolve the petition without engaging the evidentiary record and without permitting factual development. In doing so, it elects to litigate procedure rather than defend the integrity of the record itself. Where substantial allegations of fundamental error remain unrebutted, such an approach cannot substitute for merits review.

## II.A. The Government's Procedural Sequencing Requires Merits Engagement or Assume-True Review

The government's opposition advances a sequential theory of dismissal: first, that the Court should enforce the collateral-review waiver and decline to reach the merits; second, that even if the merits are reached, no fundamental error occurred; and third, that even if fundamental error

were established, relief should be denied for lack of cognizable collateral consequences or redressability.

Each step of that approach depends on the Court resolving contested issues without engagement with the unrebutted evidentiary record or assuming the truth of petitioner's allegations. Coram nobis does not permit a conviction to be insulated from review through the cumulative application of waiver, finality, and standing doctrines where the reliability of the underlying factual record itself remains unresolved.

Where the government elects not to defend the integrity of the evidentiary record on the merits, the Court may not certify that record as reliable without independent analysis. Judicial confidence in a conviction must rest on examined facts, not on procedural default or party silence.

### Table 1: Government Non-Engagement With Merits of Record-Based Allegations Raised in Petition

Table 1 below identifies discrete allegations and evidentiary categories raised in the Petition for Writ of Coram Nobis that were not substantively addressed by the Government's response. Rather than disputing the underlying facts or exhibits, the Government frequently declined to engage with the merits, responded only in abstract or procedural terms, or omitted discussion altogether. These omissions are material because they concern sentencing rationale, investigative integrity, disclosure obligations, and ongoing collateral consequences that bear directly on confidence in the conviction and sentencing record.

| Category / Allegation in Writ of Coram Nobis | Merits? | Government's Engagement | Material Omissions / Gaps |
|---|---|---|---|
| **Third-Party Crowdsourced Identification ("Sedition Hunters")** | | | |
| (Brady / Impeachment Table 3; Malicious Prosecution; Media Amplification; Ongoing Harms) | No | No mention of Sedition Hunters or any crowdsourced or vigilante identification efforts. No response to allegations regarding third-party labeling or tip-submission influencing the investigation. | Complete silence regarding the group's role, databases, submissions, or labeling practices; no defense of reliability or neutrality; no rebuttal of Brady / impeachment implications arising from reliance on partisan or unverified sources. |
| **OIG Reports / FBI Confidential Human Sources (CHS) and Investigative Outsourcing** | | | |
| (Brady Impeachment Table 3; Systemic Evidence; Malicious Prosecution) | No | No reference to DOJ OIG findings, use of CHSs related to January 6, or allegations of investigative outsourcing. | No engagement with evidence suggesting coordination, bias, or impeachment material bearing on the government's asserted narrative neutrality (Giglio implications). |
| **Prosecutorial Change from Probation to Prison Recommendation** | | | |
| (Due Process; Malicious Prosecution; Ex. M; Plea Proceedings) | Minimal (procedural history only) | Notes that probation was initially contemplated, government later sought 60 days, and court adopted that recommendation (Resp. pp. 3–4). | No explanation or rebuttal addressing allegations that the change followed media attention or extrajudicial pressure; no engagement with due-process implications of the prosecutorial pivot. |
| **Specific Fabrications in Sentencing Submissions** | | | |

| (Fabricated Evidence Section; Table 6; Exs. BB-1, D) | Indirect / brief | General assertion that sentencing did not rely on "demonstrably false information" or "misinformation of constitutional magnitude" (Resp. pp. 17–21). Characterizes disputes as mischaracterization. | No rebuttal of identified fabrications (e.g., nonexistent communications, unsupported chants, spliced or incomplete video evidence); no engagement with Napue-type claims or best-evidence concerns; no response to exhibit-by-exhibit contradictions. |
|---|---|---|---|
| **Executive Order Addressing Government Weaponization** | | | |
| (New Evidence Table 1; Ongoing Harms) | No | Mentions pardon solely to argue it does not imply innocence or erase consequences (Resp. p. 8 n.5). | No engagement with Executive Order findings or implications regarding political misuse of investigative or prosecutorial authority raised in the petition. |
| **Debanking / Financial Exclusion as Collateral Consequence** | | | |
| (Ongoing Harms; Ex. NN; Related Civil Proceedings) | No (dismissed categorically) | Groups alleged debanking and economic exclusion as non-cognizable reputational or economic harm (Resp. pp. 26–27). | No response to specific allegations of political de-platforming or extra-judicial financial penalties; no engagement with recent executive or regulatory actions addressing such practices. |
| **Domestic Violent Extremist (DVE) Labeling** | | | |
| (Ongoing Harms Section) | No | References DVE designation only in passing as conclusory (Resp. p. 26). | No explanation of basis, persistence, or removal of the label; no engagement with due-process concerns where labeling continues without adjudication. |
| **Comparator Cases and Systemic Sentencing Disparities** | | | |
| (Brady Systemic Table 5; Selective Prosecution; Ex. J6) | Partial (general only) | Responds in abstract terms regarding prosecutorial discretion and lack of improper motive (Resp. pp. 15–17). | No engagement with specific comparator cases cited; no response to dismissals or vacatures of jury-tried felony cases; no analysis of sentencing disparity and selective relief data presented. |
| **Media Amplification and Government Coordination** | | | |

| (Malicious Prosecution; Media Amplification Subsection) | Indirect | Addresses use of petitioner's own social-media speech at sentencing for remorse and deterrence (Resp. pp. 18–21). | No engagement with allegations of strategic leaks, coordination with media or outside groups, or prejudice arising from sustained pretrial and post-plea publicity (*Gentile* concerns). |
| Sentencing rationale based on media interest / symbolism | No | Government response contains no rebuttal, clarification, or alternative explanation | Goes to individualized sentencing, due process, and reliability of the conviction record. |

## II.B. Material Record Discrepancies Requiring Merits Review

## II.B.1. "Not Evidence" Misstates the Coram Nobis Standard

The government characterizes petitioner's proffer as "not evidence" because it includes summaries, charts, and record citations rather than testimonial proof. That framing misstates the applicable standard. At the coram nobis stage, a petitioner need not prove her claims; she must identify material, record-based disputes bearing on the reliability of the conviction that cannot be resolved without factual development.

Where such disputes are grounded in the existing record and remain unrebutted on the merits, the Court must either assume the truth of the allegations or permit an evidentiary hearing. The government's refusal to engage those disputes cannot be converted into a deficiency of proof on petitioner's part.

To hold otherwise would permit the government to avoid merits review simply by declining to respond to record-based allegations and then faulting the petitioner for the absence of proof the government itself resisted testing.

## II.B.2. No-Hearing Denials Require Assume-True Review or Record-Grounded Findings

Where a court denies relief without an evidentiary hearing, it may not resolve disputed factual issues against the petitioner or treat the government's non-engagement as conclusive refutation. Absent factual development, the court must either assume the truth of unrebutted, record-based allegations or identify record evidence that conclusively contradicts them.

A record cannot be deemed "conclusive" where the government has declined to engage material evidence offered by the petitioner or opposed examination of the underlying materials themselves.

## II.B.3. Material Conflicts in the Record (Table 2)

**Table 2: Conflicts / Contradictions**

This table establishes the consequence: the record contains unresolved factual disputes that cannot be resolved by waiver or procedure.

| Issue | Government's Position | Petitioner's Position (Record Based) | Why it Matters |
|---|---|---|---|
| CCTV Surveillance Footage | Asserts that the footage was "acknowledged on the record" and is "nothing new." | The footage was never produced, disclosed, or examined; petitioner did not obtain or view it until 2025. | Goes to suppression/disclosure and whether waiver can apply; bears on Brady/materiality and record integrity, where selective imagery was relied upon in lieu of complete footage necessary to assess context, intent, and accuracy. Post-*Fischer*, statutory scope and intent distinctions heighten the importance of complete, |

| | | | contextual evidence at sentencing. |
|---|---|---|---|
| Use of surveillance imagery | Relies on still imagery derived from surveillance footage to characterize petitioner's conduct. | The complete footage was not disclosed or litigated and may contradict the narrative advanced through isolated images. | Selective reliance raises reliability concerns; context must be examined to assess accuracy and avoid narrative distortion. |
| Conflation of conduct across Statement of Facts, plea, and sentencing submissions | Treats petitioner's conduct as continuous and escalatory from charging through sentencing; relies on sentencing memorandum characterizations without distinguishing admitted facts from alleged or inferred conduct. | At sentencing, the government advanced broader factual narratives and intent characterizations not admitted, not found by a jury, and not supported by evidence, collapsing distinct procedural stages into a single, undifferentiated narrative. | Raises fundamental error where sentencing relied on conduct not admitted or proven, contrary to limits on consideration of non-admitted conduct and recent clarification of statutory scope in *United States v. Fischer*; bears on due process, sentencing integrity, and record reliability. |
| Fabricated evidence at sentencing | Denies sentencing was based on "demonstrably false information" or "misinformation of constitutional magnitude." | Identified fabrications (e.g., nonexistent communications, unsupported chants, spliced videos without originals) remain unrebutted. | Determines whether sentencing was infected by materially false information (due process / *Lemon*-type concerns). |
| PSR recommendation vs. sentence imposed | Notes probation officer recommended probation; government sought 60 days; court imposed | Petition alleges an unexplained prosecutorial pivot from probation to prison recommendation following developments not reflected in the evidentiary record. | Bears on individualized sentencing and due process where departure from the PSR rests on new factual predicates not established by evidence, implicating *Lemon's* reliability requirement. |
| Lack of evidentiary basis at sentencing | Argues sentencing was not based on materially false information | Government introduced no testimony or authenticated evidence at sentencing to support its characterizations; | Determines whether the sentence rested on untested assertions rather than reliable evidence, creating a significant possibility that misinformation |

| | | relied on argument and derivative materials | infected the sentencing decision *(Lemon)*. |
|---|---|---|---|

## Table 3: Disputed Factual Predicates Not Addressed on the Merits
(Record-Based)

The following table synthesizes core factual predicates on which the government's

opposition depends and the corresponding record-based showings—supported by

exhibits—that remain unrebutted on the merits.

| Government Assertion | Petitioner's Record-Based Showing (Exhibits) | Why Merits Review Is Required |
|---|---|---|
| Plea was fully knowing and voluntary; waiver forecloses review. | Petitioner identifies categories of material information allegedly unavailable or undisclosed at plea, including third-party identification mechanisms and complete surveillance footage obtained in 2025 (Exs. A, G, S, W, LL). | Waiver presupposes knowledge and access; disputes about suppressed or unavailable material cannot be resolved by procedure alone. |
| Surveillance evidence is "nothing new" / "acknowledged on the record" | Record reflects only references to derivative still imagery or descriptions, not production or examination of the complete footage (Exs. A, I, AA, AA-1). | "Acknowledgment" ≠ disclosure; completeness and context must be reviewed to assess reliability and materiality. |
| Sentencing rested on reliable information | Petitioner identifies sentencing assertions unsupported by testimony, authentication, or admitted facts and inconsistent with the PSR (Exs. D, E, BB-1, BB-2, AA-1). | Under *Lemon/Roberts/Chaikin*, sentencing must rest on reliable factual predicates; unresolved disputes require findings or a hearing. |
| No cognizable collateral consequences / no redressability | Conviction continues to function as an authoritative predicate affecting financial access, professional standing, and litigation posture (Exs. Q, V, NN, W-1). | Article III requires meaningful redress, not total cure; vacatur alters legal status and interrupts institutional reliance. |
| Prosecution reflects ordinary discretion | Government does not engage specific comparator cases or disparities identified by petitioner (Exs. H, J-5, J-6, PP). | Comparator evidence bears on equity and selective application and cannot be dismissed in the abstract. |

**Note:** Each predicate above is supported by record exhibits and remains unrebutted on the merits. These disputes cannot be resolved through waiver, finality, standing, or mootness doctrines without factual development.

## II.C. CCTV Surveillance Footage: Selective Reliance Without Disclosure

## II.C.1. "Acknowledged" Is Not "Produced, Disclosed, or Examined"

The government has previously relied on imagery derived from the same surveillance footage at issue—specifically, a still photograph circulated publicly depicting petitioner circled in red while standing near a law enforcement officer. That isolated image was used to support the government's characterization of petitioner's conduct.

That characterization is inaccurate. The cited portions of the record do not reflect acknowledgment of the underlying surveillance footage itself—only references to derivative still imagery or descriptions—and do not show that the complete recording was produced, disclosed, reviewed, or examined by the defense or the Court.

References to surveillance imagery or generalized descriptions cannot constitute production, disclosure, or examination of the underlying recording, and cannot substitute for defense access to or judicial review of the complete footage. In this case, the sentencing record contains no reference whatsoever to the CCTV surveillance footage depicting Capitol Police officers waving individuals into the East Rotunda door shortly before Petitioner entered. Evidence of this nature bears directly on mens rea and would have been material at every critical stage of the prosecution, including charging, plea, and sentencing.

## II.C.2. Selective Reliance on Derivative Imagery Requires Examination of the Full Footage

This selective reliance demonstrates that the footage was considered significant enough to support the government's narrative when presented in fragmentary form, while its complete content is now deemed irrelevant when offered for review. Resolving the relevance of such evidence solely on procedural grounds, without examination of the full recording, leaves untested whether the complete footage contradicts or undermines the narrative advanced through isolated imagery.

The government does not address whether the footage was suppressed, selectively disclosed, or otherwise unavailable to the defense; does not analyze whether the footage is exculpatory or impeaching; and does not seek a hearing at which the footage could be evaluated in full context.

## II.D. Third-Party Crowdsourced Identification ("Sedition Hunters")

Petitioner alleged that third-party, crowdsourced identification efforts played a role in the public labeling and evidentiary narrative surrounding her investigation and prosecution, raising due-process concerns regarding reliability, bias, and the introduction of unverified material into official proceedings. These allegations are not framed as abstract criticism of investigative methods, but as record-integrity concerns arising from the potential use—direct or indirect—of externally generated identifications, labels, or narratives as substitutes for individualized proof subject to traditional evidentiary safeguards.

Specifically, petitioner alleged that partisan or vigilante-style identification mechanisms operated outside normal law-enforcement controls; that such mechanisms lack standardized reliability

testing, chain-of-custody protections, and disclosure obligations; and that any incorporation of externally generated identifications into an official investigative or prosecutorial narrative would carry Brady and impeachment implications. Petitioner further alleged that the absence of transparency regarding whether, how, or to what extent such third-party materials informed investigative decisions undermines confidence in the completeness and neutrality of the factual record.

The government's response does not address these allegations at all. It does not acknowledge the existence of third-party crowdsourced identification efforts in the January 6 investigative landscape; does not deny that such mechanisms were used, consulted, or relied upon; does not affirmatively represent that no such materials played any role in petitioner's investigation; and does not address whether any impeachment or disclosure obligations would arise if they did. Nor does the government seek an evidentiary hearing at which the provenance, reliability, or relevance of any such external inputs could be examined.

This silence is consequential. Where a petitioner raises specific, record-based due-process concerns regarding the potential introduction of unverified third-party identifications into the evidentiary narrative of a criminal case, the government cannot defeat those concerns through procedural defenses alone while declining to engage the merits. At minimum, the government's failure to respond leaves unrebutted petitioner's contention that external, non-governmental labeling or identification mechanisms may have contributed to a distorted or incomplete factual record.

Such a circumstance is incompatible with confidence in the integrity of the conviction. Whether third-party crowdsourced materials influenced the petitioner's investigation directly, indirectly, or not at all is a factual question. But where the government declines to deny their involvement, to explain their role, or to demonstrate that no disclosure or reliability issues arise, the Court cannot assume the integrity of the record by default. Absent factual development or express findings, unresolved questions regarding the use of unverified external identifications bear directly on record reliability and require merits review or an evidentiary hearing.

## II.E. Comparator Treatment: DOJ Vacaturs With Prejudice of January 6 Jury Convictions

In recent proceedings, the Department of Justice has moved to vacate with prejudice the convictions of numerous January 6 defendants whose cases proceeded to jury trial, including convictions for offenses more serious than those at issue here. These vacaturs were not limited to plea-based convictions, nor were they confined to cases involving procedural irregularities unique to those defendants. Rather, they reflect a discretionary determination by the government that continued maintenance of certain January 6 convictions no longer serves the interests of justice.

The government's response does not address these vacaturs, nor does it engage petitioner's argument that the government's willingness to nullify jury convictions—including felony convictions—bears directly on the equitable considerations governing coram nobis relief. The omission is notable given that petitioner's conviction rests on a plea entered amid alleged fabrication, suppression, and extrajudicial influence, while other defendants convicted after full trials have been granted complete vacatur with prejudice.

This disparity underscores that finality alone is not the government's controlling principle. Where the government itself has determined that vacatur is appropriate—even in cases involving jury verdicts and allegations of violent conduct—the continued insistence on preserving petitioner's conviction without merits engagement warrants scrutiny. Equity does not favor selective finality, particularly where unresolved allegations call into question the reliability of the underlying record.

The government's silence on these comparator cases further reinforces petitioner's position that relief here would not be anomalous, unprecedented, or disruptive. To the contrary, it would align with the government's own recent actions recognizing that certain January 6 convictions should no longer stand.

## II.F. Fabricated Evidence at Sentencing

No evidentiary showing was made at sentencing to support the government's characterizations of petitioner's conduct. The government relied on argument and unsworn representations rather than testimony, authenticated exhibits, or original recordings, while opposing any post-conviction inquiry into the accuracy of those representations.

The government did not object to the PSR's findings of minimal conduct or its recommendation of probation. Nevertheless, at sentencing it advanced new factual assertions—without evidentiary support—purporting to show violent intent, assertions unsupported by the PSR, the plea record, or any evidentiary presentation. This divergence raises due-process concerns where sentencing rests on unsupported factual assertions introduced after acceptance of the PSR, without objection or evidentiary foundation.

## III. Fundamental Error - (Why These Omissions Matter)

Coram nobis relief is reserved for errors "of the most fundamental character"—errors that undermine confidence in the validity and reliability of the proceedings themselves. *Morgan v. United States*, 346 U.S. 502, 512–13 (1954). The doctrine is concerned not with technical missteps, but with whether a conviction rests on a factual record that can still be trusted.

Where the record is shaped by suppression, fabrication, selective reliance, or procedural conflation—and those defects remain unaddressed on the merits—the resulting conviction cannot command confidence. In such circumstances, finality does not preserve legitimacy; it entrenches unreliability. Coram nobis exists to prevent that result.

## III.A. The Government's Materiality Framing Misapprehends the Harm

The government frames materiality in terms of whether petitioner can show a reasonable probability that she would have rejected the plea and insisted on trial. That framing is misplaced.

Petitioner does not seek relief on the theory that she would have proceeded to trial absent the defects identified. Rather, the claim is that suppression, distortion, and unsupported factual assertions infected the reliability of the official record such that the conviction and sentence can no longer operate as authoritative factual judgments. Where the harm concerns record integrity and sentencing accuracy, materiality turns on whether the defects meaningfully shaped the factual basis or punishment imposed, not solely on whether the defendant would have altered her plea decision.

Nor can the government's assertion that the evidence was "overwhelming" substitute for examination of the complete evidentiary record. Claims of evidentiary strength cannot excuse the absence of disclosure, testing, or review—particularly where petitioner has identified specific materials, including full surveillance footage, that were never produced, examined, or evaluated in context. The government cannot rely on the purported strength of the evidence while opposing the factual development necessary to assess its completeness and reliability.

### III.B. Sentencing Integrity Was Compromised

Sentencing is a critical stage of the criminal process at which due process requires that punishment rest on accurate and reliable information. That requirement is not satisfied where sentencing turns on argument, inference, or unsworn representations unsupported by evidence.

The government asserts that *Napue v. Illinois* applies only at trial and therefore forecloses petitioner's claims of fabricated evidence. For purposes of sentencing, petitioner does not dispute that *Napue* concerns false testimony before a jury. But that framing does not resolve the defect alleged here. Independent of *Napue*, due process prohibits the imposition of a sentence based on materially false or unreliable information, whether the conviction followed a trial or a plea. That principle is governed by *Roberts v. United States*, *United States v. Lemon*, and *United States v. Chaikin*, which require that sentencing rest on accurate and reliable factual predicates.

The government's reliance on *Chaikin* likewise misses the mark. *Chaikin* addresses the permissible scope of information a sentencing court may consider; it does not relax the constitutional requirement of reliability. Petitioner does not dispute that a court may consider

information beyond the offense of conviction, including dismissed conduct. The defect alleged here is that punishment was increased based on factual predicates that were materially false, spliced, unsupported, or unauthenticated. *Chaikin* does not authorize sentencing on such a basis, and doing so creates a significant possibility that misinformation infected the sentencing determination.

Nor do *Roberts* and *Lemon* support the government's position. While sentencing courts may consider a wide range of information, due process is not satisfied where material factual assertions are introduced without evidentiary support and in tension with the PSR's findings. *Lemon* does not require proof of perjury or formal falsity; it requires the absence of a significant possibility that unreliable or untested assertions influenced the sentence imposed. Where the government advances new narratives at sentencing—unsupported by testimony, authentication, or admitted facts—and the court departs from the PSR without resolving those factual predicates, the reliability requirement is not met.

Due process is violated not only when falsehoods are proven, but when sentencing turns on factual predicates that were never tested, admitted, or reliably established.

The same principles govern the government's reliance on petitioner's speech. The government correctly observes that speech may be relevant to sentencing considerations such as remorse and deterrence. Petitioner does not contend otherwise. The defect alleged here is the use of distorted or unreliable factual predicates—derived from selective or incomplete media—to infer conduct or intent beyond what was admitted or reliably established. Even where speech is relevant, sentencing determinations must remain accurate and individualized to the defendant's proven

conduct. General deterrence cannot serve as a vehicle for importing collective guilt or attributing to petitioner actions, intent, or violence not supported by the plea record, the PSR, or reliable evidence.

Relevance does not relieve the government of its obligation to ensure that factual inferences drawn from speech are accurate, supported, and tethered to the defendant's own conduct.

As the record reflects, no evidentiary showing was made at sentencing to support the government's characterizations of petitioner's conduct. The government did not object to the PSR's findings of minimal conduct or its recommendation of probation, yet advanced new factual assertions purporting to establish violent intent—assertions unsupported by the PSR, the plea record, or any evidentiary presentation. Where sentencing rests on such unsupported assertions, the integrity of the sentencing proceeding is compromised in a manner that qualifies as fundamental error.

### III.C. Conflation of Procedural Stages Further Distorted the Record

The reliability of the proceedings was further undermined by the government's conflation of distinct procedural stages. At sentencing, the government collapsed charging allegations, plea-stage representations, and sentencing advocacy into a single narrative, attributing to Petitioner conduct and intent never admitted in the plea, never found by a jury, and never supported by evidence.

This conflation impermissibly expanded the factual basis of the conviction beyond what was established in the record and contravened settled limits on the use of non-admitted conduct.

Where a sentence is imposed on the basis of an inflated or amalgamated narrative untethered from the established record, the resulting judgment lacks the reliability required by due process.

### III.D. Waiver and Discretion Cannot Cure Fundamental Record Defects

The government relies on waiver, discretion, and finality to avoid engagement with these defects. But coram nobis does not permit procedural doctrines to substitute for examination of fundamental error. Waiver cannot extend to defects that undermine confidence in the factual basis of a conviction, nor can prosecutorial discretion insulate an unreliable record from judicial scrutiny.

Waiver doctrine presupposes knowledge and access to the material facts allegedly relinquished. Alleged suppression, fabrication, or substitution of evidence that was undisclosed, inaccessible, or unknowable at the time of the plea cannot, as a matter of law, be waived because the factual predicate for informed relinquishment did not exist.

The government's waiver theory is also internally inconsistent. The plea agreement preserves collateral review for claims based on newly discovered evidence or ineffective assistance of counsel. If the Court enforces the collateral-review waiver, it must also give effect to its express exceptions. The government cannot invoke the waiver as controlling while nullifying the exceptions the parties expressly preserved.

Rule 12(b)(3) does not alter this analysis. Rule 12 waiver presupposes that the basis for a claim was reasonably available at the time of pretrial motion practice. Where allegations of selective or vindictive prosecution rest on suppressed information, investigative asymmetry, or facts that

emerged only after the proceedings concluded, Rule 12 does not bar later review. In any event, coram nobis is an equitable remedy designed to address fundamental defects that evade ordinary procedural channels, and it permits review notwithstanding traditional timeliness doctrines where the integrity of the conviction itself is at issue.

The question is not whether petitioner complied with pretrial motion deadlines, but whether a conviction infected by later-revealed fundamental defects may continue to stand unexamined.

Nor does the government's attempt to exclude "newly discovered evidence" from coram nobis succeed. Petitioner does not seek relief based on new evidence as a freestanding innocence claim. She invokes newly discovered material only insofar as it reveals constitutional and fundamental defects—suppression, fabrication, and sentencing unreliability—that undermine confidence in the conviction itself. Where such defects are shown, coram nobis provides an appropriate vehicle for relief regardless of the label the government assigns to the evidence revealing them.

Where the government declines to defend the integrity of the record on the merits and instead urges dismissal based on waiver or timeliness, the Court is left with unresolved allegations that go to the heart of the conviction's validity. Continued reliance on procedural avoidance in that posture undermines, rather than preserves, the legitimacy of the proceedings.

Where alleged defects concern the accuracy of the factual basis for conviction or sentencing, they are fundamental by definition because they bear directly on the legitimacy of the judgment imposed.

## IV. Collateral Consequences: Reputational Harm as a Legal Reality

Having established fundamental error, the Court must consider whether the conviction continues to impose legally cognizable collateral consequences.

## IV.A. Reputational Harm as a Legal Reality *(Without Cataloguing Personal Pain)*

Once fundamental error is established, the remaining inquiry is whether the conviction continues to impose concrete consequences sufficient to warrant coram nobis relief. It does. The continued maintenance of an unreliable conviction carries ongoing reputational and legal consequences that the law recognizes as real, foreseeable, and cognizable.

Reputational harm in this context is not a matter of subjective offense or personal sensitivity. Criminal convictions function as authoritative factual judgments that institutions rely upon in making consequential decisions. Courts have long recognized that such judgments affect legal status, credibility, and access to opportunities well beyond completion of sentence.

That reliance is institutional, not speculative. Courts, employers, licensing authorities, financial institutions, digital platforms, and media entities routinely treat the existence of a conviction as dispositive or highly probative, often without access to or examination of the underlying record. Where the record itself is unreliable, continued reliance by such actors perpetuates harm independent of any additional conduct by the petitioner.

These consequences do not dissipate with time or release from custody. They persist precisely because the conviction continues to operate as an authoritative proxy for adjudicated truth. The

law does not require a petitioner to catalogue emotional distress or personal suffering to establish collateral consequences. It requires only a showing that the conviction continues to function in the world as a source of legal and reputational disability.

Petitioner does not belabor personal pain here. That is neither necessary nor appropriate. The relevant point is structural: where a conviction rests on an unresolved and unreliable factual record, its continued operation imposes ongoing legal consequences sufficient to satisfy the collateral-consequences requirement for coram nobis relief.

## IV.B. Ongoing Harm From Continued Institutional Reliance *(Why the Harm Persists)*

The harm flowing from an unreliable conviction is not limited to isolated adverse decisions or discrete reputational effects. It persists because the conviction continues to function as an authoritative record that institutions rely upon in lieu of individualized assessment.

When a criminal conviction remains intact, it operates as a fixed proxy for adjudicated fact. Courts, employers, licensing authorities, financial institutions, platforms, and other third parties routinely substitute the existence of the conviction for independent evaluation of conduct or context. That substitution is structural, not discretionary, and it persists regardless of whether the underlying record remains accurate.

These effects do not dissipate with completion of sentence or release from custody. The continuing force of the conviction lies not in punishment already served, but in its ongoing use as a credential of fact. So long as the conviction remains uncorrected, it continues to shape legal

status, access to opportunities, and institutional decision-making through ordinary, predictable processes.

Where the government declines to engage with evidence calling the reliability of the conviction into question, that reliance is perpetuated. Silence and procedural avoidance allow an unreliable record to remain operative, not because it has been examined and upheld, but because it has not been examined at all. In that way, the absence of review itself sustains the ongoing harm.

This form of injury does not require repeated government action. It is sustained by the continued existence of a conviction whose factual foundation remains unresolved and by the foreseeable reliance of third parties on that conviction as an accurate account of reality. Coram nobis exists to address precisely this condition: where an individual remains subject to ongoing legal consequences because an unreliable conviction continues to operate as an authoritative judgment.

The question is not sympathy or redress for past suffering, but whether the law will continue to authorize reliance on a record whose integrity has not been defended.

## V. Benefits of Vacatur (What the Remedy Actually Does)

Vacatur is not a cure-all, nor does petitioner suggest that it is. Its function is narrower and precise: to correct legal status, interrupt reliance on an unreliable conviction, and restore accuracy to the official record upon which others act. Those effects are concrete, foreseeable, and legally meaningful.

First, vacatur corrects petitioner's legal status. A criminal conviction operates as an authoritative judgment with continuing legal force. Where that judgment rests on a record infected by fundamental error, vacatur removes the legal predicate that constrains petitioner's rights, capacities, and standing. It does not declare innocence; it withdraws judicial endorsement of a record that can no longer be trusted.

Second, vacatur interrupts third-party reliance. Courts, employers, licensing authorities, financial institutions, platforms, and media entities routinely rely on the existence of a conviction as a proxy for adjudicated fact. Vacatur does not compel those actors to reach any particular conclusion, but it eliminates the conviction as an authoritative source upon which such reliance is based. That interruption alone has independent legal significance.

Third, vacatur permits record correction and downstream clarification. Where government filings, sentencing submissions, or official statements have been relied upon by others, vacatur enables petitioner to seek correction, reconsideration, or withdrawal based on an altered legal posture. It restores the ability to challenge the continued use of representations derived from government papers that no longer carry the imprimatur of a valid conviction.

Fourth, vacatur affects the petitioner's standing in ongoing and future proceedings. The existence of a conviction can limit access to judicial forums, constrain available claims or defenses, and distort assessments of credibility or harm. By removing a conviction whose factual foundation remains unresolved, vacatur restores petitioner's ability to litigate on equal legal footing, free from the continuing shadow of a judgment the Court has declined to defend on the merits.

Importantly, vacatur promises none of what the government warns against. It does not guarantee reputational repair, compel retractions, or erase public discourse. It creates opportunity, not outcome. It restores accuracy to the legal record and permits institutions and third parties to reassess their reliance in light of the Court's determination that the conviction cannot be sustained.

Vacatur would be consistent with the government's recent decisions to seek dismissal of other January 6 convictions, reinforcing equitable parity.

That is the proper scope of equitable relief. Where a conviction rests on a record infected by fundamental error, vacatur does not overreach; it simply withdraws judicial authorization for the continued use of a judgment that no longer warrants confidence.

## VI. Legal Argument (Applying the Doctrine)

The legal framework governing coram nobis relief is settled and intentionally flexible. It exists to permit courts to correct convictions resting on fundamental error where no other avenue of relief remains and where the interests of justice so require. Properly applied, that framework readily accommodates the circumstances presented here.

## VI.A. The Elements of Coram Nobis Are Satisfied

Coram nobis relief is available where (1) no other remedy exists, (2) valid reasons justify the petitioner's delay, (3) adverse consequences persist, and (4) the error alleged is of the most fundamental character. Each element is satisfied.

First, no other remedy exists. Petitioner is no longer in custody and therefore has no access to habeas relief. Coram nobis is the sole procedural vehicle through which the Court may address the integrity of the conviction.

Second, valid reasons justify the timing of the petition. The diligence inquiry in coram nobis turns on discoverability, not hindsight. Where alleged defects concern evidence that was suppressed, selectively disclosed, or otherwise unavailable to the defense, delay is measured from the point at which the petitioner first obtained access to the material facts necessary to assert the claim. Here, the petition identifies specific, record-based defects—including fabrication, suppression, procedural conflation, and sentencing irregularities—that were not discoverable or capable of full presentation earlier and that the government has declined to address on the merits. Petitioner acted promptly once those facts became available, seeking relief through the only remaining procedural mechanism. The government identifies no earlier point at which petitioner could have raised these claims with access to the full evidentiary context now at issue. Denying relief on timeliness grounds in these circumstances would reward suppression and penalize delayed disclosure.

Third, adverse consequences persist. As set forth above, the conviction continues to operate as an authoritative judgment relied upon by courts, institutions, and third parties, producing ongoing legal and reputational consequences sufficient to satisfy Article III and the collateral-consequences requirement.

Fourth, the errors alleged are of the most fundamental character. The petition identifies defects that go to the reliability of the factual record itself—defects that remain unresolved on the merits

and that undermine confidence in both the conviction and the sentence. Such errors fall squarely within the historic purpose of coram nobis.

Taken together, these circumstances satisfy each element of the coram nobis standard and warrant review on the merits.

## VI.B. The Government Mischaracterizes the Collateral-Consequences Requirement

The government treats collateral consequences as requiring extraordinary or speculative harm, or as negated by waiver or pardon. That framing is incorrect. The collateral-consequences inquiry asks whether the conviction continues to impose real-world effects sufficient to warrant judicial attention—not whether the petitioner can guarantee reputational repair or economic recovery.

The government's redressability argument likewise imposes a standard the law does not require. Article III does not demand that vacatur eliminate all downstream consequences of a conviction; it requires only that the relief sought meaningfully alter the petitioner's legal status or the authoritative predicate upon which third parties rely. Vacatur does exactly that. A criminal conviction functions as an official judgment of fact that courts, licensing authorities, financial institutions, platforms, and other actors routinely treat as dispositive or highly probative. Removing that judgment withdraws the legal imprimatur that enables such reliance. That third parties may continue to make independent assessments does not defeat redressability; it confirms that vacatur provides the opportunity for reassessment rather than guaranteeing outcome.

The government's assertion that petitioner's debanking allegations are moot by virtue of a subsequent Executive Order misapplies mootness doctrine. An Executive Order announcing

regulatory policy does not itself restore closed accounts, reverse private actors' decisions, or guarantee future access to financial services. Mootness requires that there be no live controversy and no reasonable prospect of ongoing or recurring harm. Here, the conviction remains intact and continues to operate as a predicate for risk-based exclusion by private institutions, sustaining an ongoing risk of denial independent of any prospective regulatory guidance. Policy direction is not individual redress, and it does not eliminate the continuing effects of an unreliably maintained conviction. A case is not rendered moot merely because the government announces a change in policy while leaving the challenged legal predicate in place. In any event, petitioner does not rely on debanking alone to establish standing; it is one illustration of the broader, ongoing collateral consequences flowing from the continued maintenance of an unreliable conviction.

Finally, waiver and pardon do not negate collateral consequences. A pardon does not vacate a conviction or resolve disputes about the integrity of the underlying record. So long as the conviction remains on the books, it continues to function as an authoritative judgment relied upon by courts, institutions, and third parties. Reputational, economic, and legal consequences flow predictably from that reliance. Where such consequences are ongoing and concrete, the collateral-consequences requirement for coram nobis relief is satisfied.

## VI.C. Vacatur Need Only Provide Meaningful, Non-Illusory Relief

The government argues that vacatur should be denied because it would not "fix" petitioner's circumstances. That argument misunderstands the scope of equitable relief. Coram nobis does not require certainty of outcome; it requires that relief be meaningful rather than illusory.

Vacatur here would have concrete legal effects. It would alter petitioner's legal status, withdraw judicial endorsement of an unreliable conviction, interrupt third-party reliance on that conviction as an authoritative predicate, and restore petitioner's ability to litigate and seek correction of false or unsupported representations derived from government filings. That vacatur does not guarantee reputational repair or compel retractions is immaterial. The law requires opportunity for redress, not assurance of result.

Where relief meaningfully changes the legal landscape in this manner, it satisfies the remedial function of coram nobis.

## VI.D. Equitable Discretion Favors Correction, Not Preservation of Falsehoods

Equitable discretion weighs decisively in favor of review. The government has elected to defend this conviction through procedural doctrines rather than by defending the integrity of the record itself. It has declined to rebut specific allegations of fabrication, suppression, and sentencing irregularities, while opposing any evidentiary hearing that might test those claims.

Equity does not favor preserving a conviction whose factual basis remains contested and unexamined, nor does it favor insulating such a conviction from review through waiver, timeliness, or abstract appeals to finality. Where the continued operation of a conviction perpetuates reliance on a record the government will not defend on the merits, the interests of justice favor correction.

Coram nobis exists for precisely this circumstance. Granting relief here would not expand the doctrine or unsettle settled convictions; it would apply established principles to a record that no longer warrants confidence.

## VII. Conclusion and Prayer for Relief

This petition presents a conviction that cannot be sustained on a reliable and undisputed factual record. The government has declined to defend the integrity of that record on the merits, relying instead on waiver, finality, and discretion to avoid examination of unresolved allegations of fundamental error. Coram nobis exists to address precisely such circumstances.

Petitioner has shown that no alternative remedy remains, that fundamental errors infected the proceedings, that adverse consequences persist, and that vacatur would provide meaningful, non-illusory relief by correcting legal status and interrupting reliance on an unreliable conviction. Equity favors correction, not preservation, where the factual foundation of a judgment has not been defended.

At this posture, the Court is presented with a limited and well-defined set of options. Where a petitioner advances specific, record-based allegations of suppression, fabrication, and sentencing unreliability that the government has not rebutted on the merits, the Court may (1) permit factual development through an evidentiary hearing; (2) assume the truth of those unrebutted allegations and determine whether they warrant coram nobis relief; or (3) make express, record-grounded findings explaining why, even if true, the alleged defects do not undermine the reliability of the conviction or sentence.

What the Court may not do is resolve disputed factual issues against the petitioner by implication or certify the integrity of the record without engagement. Absent factual development or express findings, the continued operation of a conviction resting on unresolved record-integrity defects cannot command confidence.

For these reasons, Petitioner respectfully requests that the Court grant the writ of error coram nobis, vacate the conviction, and grant such further relief as the Court deems just and proper.

Respectfully submitted:

/s/ Jennifer L. Ryan

Jennifer L. Ryan, Pro Se
6160 Warren Pkwy, Ste: 100
Frisco, TX 75034
469-578-0747
jennaryanrealty@gmail.com

February 1, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of February, 2026, I caused a true and correct copy of Defendant's Sur-Reply to the United States' Opposition to Defendant's Petition for a Writ of Error Coram Nobis to be served upon counsel of record for the United States by filing the foregoing with the Court's CM/ECF system, which will effect service on all registered counsel.

/s/ Jennifer L. Ryan