**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **UNITED STATES OF AMERICA**, |
| v. |
| **JENNIFER LEIGH RYAN**, |
| Defendant. |

Case No. 1:21-cr-50-1 (CRC)

**ORDER**

Jennifer Leigh Ryan participated in the storming of the Capitol on January 6, 2021. Charged with multiple offenses, she pled guilty to one of them (parading, demonstrating, or picketing in a Capitol building) and was sentenced by this Court to sixty days in jail. Several years later, after serving her sentence, Ms. Ryan filed a petition for a writ of error *coram nobis* that challenges various bases for her conviction and sentencing.

Separately, Ryan has moved for the recusal of the undersigned, alleging judicial bias under 28 U.S.C. § 455. "Recusal is warranted" under that statutory provision "only if a reasonable and informed observer would question the judge's impartiality." Klayman v. Rao, No. 21-cv-02473 (CRC), 2021 WL 4948025, at *8 (D.D.C. Oct. 25, 2021) (cleaned up). Recusal is limited to "truly extraordinary" cases, and the moving party bears the "heavy" burden of demonstrating sufficient bias. Cobell v. Kempthorne, 455 F.3d 317, 332, 334 (D.C. Cir. 2006).

To carry this burden, the moving party must provide evidence of hostility that would call a judge's objectivity into question by a reasonable person; mere "conclusory, unsupported or tenuous allegations" will not suffice. Klayman, 2021 WL 4948025, at *8 (citation omitted). Knowledge and opinion "properly and necessarily acquired in the course of [prior or current] proceedings," critical or disapproving judicial remarks, judicial rulings, and "ordinary efforts at courtroom administration" are likewise insufficient grounds for recusal without more evidence of

deep-seated bias.  Liteky v. United States, 510 U.S. 540, 551, 555–56 (1994).

Ryan fails to meet the demanding standard for recusal.  At the outset, most of her accusations of bias largely rest on misattributed and/or acontextual quotes that that have nothing to do with her prosecution.  More fundamentally, Ryan does not offer evidence of actual bias "but instead merely *infer[s]* bias from unfavorable judicial rulings," including the sentence she received and the Court's statements from the bench in separate January 6 matters.  Perkins Coie LLP v. DOJ, 775 F. Supp. 3d 431, 436 (D.D.C. 2025) (citing Rafferty v. NYNEX Corp., 60 F.3d 844, 848 (D.C. Cir. 1995)).  Exhibit F of her *coram nobis* petition, which she incorporates by reference in her motion for recusal, does not actually consist of biased "extra-judicial remarks" made to the media, as she suggests.  Pet. for Writ of Error Coram Nobis ("Pet."), Ex. F at 21. Rather, the exhibit cites to *media* reporting on a variety of subjects, some of which quotes the Court's remarks at hearings in other January 6 criminal proceedings.  To the extent such media reporting of court activity accurately quotes what was said at the relevant hearings, the Court's statements simply and properly "reflect[] what [the Court] learned . . . during the proceedings." Perkins Coie LLP, 775 F. Supp. 3d at 438 (citing United States v. Microsoft Corp., 253 F.3d 34, 115 (D.C. Cir. 2001) (en banc) (per curiam)).  No "reasonable and informed observer" would consume the reporting cited to in Exhibit F—or, for that matter, any of Ryan's other voluminous exhibits purporting to trace the undersigned's missteps—and come away "question[ing] th[is] judge's impartiality."  See Klayman, 2021 WL 4948025, at *8 (citation omitted).

Ryan also takes issue with the Court's comments at her own sentencing hearing, arguing that the undersigned "punished protected speech," "adopted fabricated evidence," and "prioritized optics over individualized justice."  Mot. for Recusal at 3.  Not so.  As the Court's Memorandum Opinion resolving the petition for a writ of error *coram nobis* emphasizes, Ryan's

sentence was carefully tailored based on her conduct on January 6 and her demonstrated lack of

remorse and accountability in the weeks immediately following the riot.  Though Ryan may

remember the events of that day differently, the Court's "measured, accurate description of the

facts of January 6" are by no means "disqualif[ying]."  United States v. Purdy, No. 1:22-cr-19

(RCL), 2024 WL 2720444, at *1 (D.D.C. May 28, 2024).  Neither are the Court's perhaps

occasionally "blunt" observations regarding Ryan's conduct, which, "without more" do not

"translate into a showing of judicial bias."  Id. (cleaned up).  Again, "judicial rulings alone

almost never constitute a valid basis for a bias or partiality motion," and "can only in the rarest

circumstances evidence the degree of favoritism or antagonism required" to demonstrate bias.

Liteky, 510 U.S. at 555.  Ryan ultimately identifies no concrete evidence demonstrating that the

undersigned harbors any "favoritism or antagonism that would [have] ma[d]e fair judgment

impossible" in her case.  Id.[1]

---

[1] In her motion for recusal, Ryan cites "United States v. Perlmutter, No. 21-125 (D.D.C. 2023)" as an example where a court in this district apparently granted "recusal" based on "perceived J6 bias."  Mot. for Recusal at 3.  Neither the Court nor the government could locate this case using relevant databases.  See Opp'n to Mot. for Recusal at 9.

The cited case appears to be nonexistent and was perhaps hallucinated by an artificial intelligence ("AI") tool.  If so, a strong caution is in order.  "It is not acceptable for parties to submit filings to the Court containing citations to legal authority that does not exist, whether drafted with the assistance of artificial intelligence or not."  Williams v. Cap. One Bank, N.A., No. 24-cv-2032 (RC), 2025 WL 843285 (D.D.C. Mar. 18, 2025).  When a litigant, even an unrepresented one, submits a written motion to the Court, she bears an "affirmative duty to conduct a reasonable inquiry into the substance of her filing before it is presented to the Court, including [by] verifying that every citation is real."  Rubio v. District of Columbia, No. 23-cv-719 (RDM), 2024 WL 4957373, at *4 (D.D.C. Dec. 3, 2024) (cleaned up); see also Fed. R. Civ. P. 11.

Ryan's status as a *pro se* litigant does not absolve her of responsibility to ensure that her motions and associated citations are true and correct.  See, e.g., Petrozzi v. Bowser, No. 25-cv-2335 (JMC), 2025 WL 2531848, at *1 (D.D.C. Sep. 2, 2025).  And Ryan is not exempt from court sanctions just because she is *pro se*.  See, e.g., Bristol Petroleum Corp. v. Harris, 901 F.2d

It is, accordingly, hereby **ORDERED** that Defendant's [123] Motion for Recusal is DENIED.

_____

CHRISTOPHER R. COOPER
United States District Judge

Date:   July 17, 2026

_____

165, 168 (D.C. Cir. 1990) (observing that sanctions against *pro se* litigants may be applicable in some circumstances); Mikkilineni v. Penn Nat'l Mut. Cas. Ins. Co., 271 F. Supp. 2d 151, 155 (D.D.C. 2003) (dismissing a *pro se* plaintiff's case as sanction for contravening court order). Citations to AI-hallucinated cases have been grounds for sanctions in other matters.  See, e.g., Malkeet Lnu v. Blanche, 177 F.4th 1014, 1031–32 (9th Cir. 2026) (imposing monetary sanctions, among other consequences, on attorneys who used generative AI and misrepresented their use to the court); United States v. Farris, 171 F.4th 920, 923–924 (6th Cir. 2026) (sanctioning defense counsel in criminal matter for using AI tool to misrepresent caselaw); Fletcher v. Experian Info. Sols., Inc., 168 F.4th 231, 239–40 (5th Cir. 2026) (sanctioning counsel for using generative AI tool and misleading court about use because "[m]odern generative AI may be a new technology, but the same sanctions rules apply").  The Court thus reminds Ryan of her obligations and cautions her as to the potential penalties associated with flouting them.